

RK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN GRIFFIN                                    CIVIL ACTION

    V.                                    :

DONALD T. VAUGHN, et al.                        NO. 93-4862

FILED

MAR 28 1994

MICHAEL E. KUNZ, Clerk
By ____ /m : ____ Dep. Clerk

MEMORANDUM

R.F. KELLY, J.                            March 28 , 1994

        This matter is before the court on John Griffin's
Petition for a Writ of Habeas Corpus under 28 U.S.C. 2254.  The
record discloses that on August 20, 1975, a jury convicted
petitioner of first degree murder and criminal conspiracy in the
Philadelphia Court of Common Pleas under indictment numbers 1431-
32, January Term 1975.  Post Verdict Motions were denied by an En
Banc Court after the trial judge, the Honorable Jacob Kalish,
sentenced Mr. Griffin to life in prison.

        On direct appeal, the Superior Court of Pennsylvania
affirmed the conviction in a published opinion.  Commonwealth v.
Griffin, 271 PA Super 228 [1980].  The Pennsylvania Supreme Court
denied Allocatur on April 1, 1980.

        On or about April 17, 1984, Griffin filed a Habeas
Corpus Petition in this Court raising six claims.  In a Report
and Recommendation filed November 26, 1984, United States
Magistrate Judge Peter B. Scuderi concluded that petitioner had
exhausted his state remedies, reviewed the claims on the merits

1

and concluded that the petition should be denied as meritless and that there was no probable cause for appeal.  On December 12, 1984 Judge Clarence C. Newcomer of this Court approved and adopted that Report and Recommendation.  [See Exhibits A and B attached to the Supplemental Response to Petition for Writ of Habeas Corpus.  <u>Griffin v. Zimmerman</u>, Civil Action No. 84-1843.]

Petitioner filed the present Habeas Corpus Petition on or about September 23, 1993 raising the same claims as set forth below.[1]  It is the position of the Government that John Griffin has already had one Federal Habeas Corpus Petition reviewed and denied on its merits and therefore the present petition constitutes an abuse of the Writ.

---

1.  On September 11, 1985, Petitioner Griffin filed a pro see petition under Pennsylvania's Post Conviction Hearing Act, 42 PA C.S.A. 9541 et seq. (repealed).  Because petitioner had pending in the Third Circuit a Request for Certification of Probable Cause from the denial of a Federal Habeas Corpus Petition, his PCHA Petition was deemed premature and was dismissed without prejudice.  When the Third Circuit denied relief, see <u>Griffin v. Zimmerman</u>, no. 84-1757 (3d Cir.), petitioner reapplied for State Collateral Review.  Follwoing an evidentiary hearing, the Honorable James D. McCrudden denied PCHA relief.
On appeal to the Superior Court, petitioner alleged, inter alia, that:
1.  the Commonwealth "struck a deal" with key witness Calvin Hunter in order to obtain his testimony, and trial counsel was ineffective for failing to produce evidence of the "deal" and
2.  the trial court erroneously excluded testimony from a potential defense witness, James Turner, and trial counsel was ineffective for failing to preserve that error for appellate review.  The Superior Court affirmed on March 31, 1992.  <u>Commonwealth v. Griffin</u> No. 1178 Philadelphia 1991 Memorandum Opinion filed March 31, 1992.  The Pennsylvania Supreme Court denied petitioners request for allowance of appeal on July 21, 1992.  <u>Commonwealth v. Griffin</u> No. 268 E.D. Allocatur Docket 1992.

## FACTUAL BACKGROUND

On September 29, 1974 petitioner John Griffin, Theodore Moody, Theodore Brown, James Price and Calvin Hunter were incarcerated in D Block the maximum security area of Holmesburg Prison.  While Hunter sat in his cell he saw petitioner John Griffin, Moody and Brown hustle Price down the corridor (N.T. 8/11/75, 300-04).  As Price disappeared down the hall with his captors he screamed out three times, "help, their killing me, please help me, somebody please help me, their killing me." Moments later Hunter saw petitioner John Griffin, Moody and Brown again walk past his cell; Price was not with them (N.T. 8/11/75, 172, 305-08, 310-11).  When Calvin Hunter asked petitioner, "what was all the noise about," petitioner replied, "nothing that concerns you" (N.T. 8/11/75, 310-11).

Later that day a prison guard discovered Price's body, hanging from a braided sheet in a vacant cell.  There were wounds on his face and a sharp instrument had been thrust into his rectum.  The guard ordered a lockdown of the Block.  During the lockdown, Calvin Hunter told the guard, "they killed that guy back there," and he identified petitioner as one of the killers (N.T. 8/11/75, 173, 193-94).

The witness Calvin Hunter died before John Griffin's case came to trial.  The Commonwealth was allowed to use his preliminary hearing testimony against petitioner at trial.  In addition to Calvin Hunter's testimony, the Commonwealth

demonstrated at trial that John Griffin had a compelling motive
to kill Price.  At the time of the murder, John Griffin was
awaiting trial in Washington, D.C. for seven "Hanafi" murders in
1973.  Price, who had testified against Griffin in that case
before a Grand Jury was slated to testify against Griffin at the
pending trial (N.T. 8/15/75, 613-14).

Petitioner Griffin now asserts that the key witness
Calvin Hunter, who had criminal charges pending against him when
he testified against petitioner, received a "deal or benefit" in
exchange for his testimony.  Petitioner also alleges that the
prosecutor failed to disclose evidence of the deal and that trial
counsel was ineffective for failing to produce certain evidence
in this regard.  Also at trial the defense sought to call as a
defense witness James Turner, a fellow inmate who purportedly
would have testified that Calvin Hunter had said that he Hunter
had been offered "certain rewards" in exchange for his appearance
as a Commonwealth witness against John Griffin.  It is now
alleged that it was error for the trial court to exclude that
testimony and that defense trial counsel was incompetent for not
preserving that error.  It is not disputed that these issues were
not raised in the first Habeas Corpus petition.

## ABUSE OF THE WRIT

As required by the case of <u>Wise v. Fulcomer</u>, 958 F.2d
30 [1992] we should first determine the government's contention
that this second Habeas Corpus Petition constitutes an abuse of
the writ.  In <u>McClesky v. Zant</u>, 111 S.Ct. 1454 (1991), the

4

Supreme Court made clear that when a prisoner files a second or subsequent Habeas Corpus petition, the government bears the burden of pleading abuse of the writ which is satisfied if it notes petitioner's prior writ history, identifies claims appearing for the first time, and alleges that petitioner has abused the writ. The burden then shifts to petitioner to excuse the failure to raise the claim earlier by showing the "cause" as well as actual "prejudice" thereby showing a fundamental miscarriage of justice.

In his first Federal Habeas Corpus Petition Griffin listed six grounds for relief: (1) the trial court erred in failing to suppress two photographic identifications, (2) the trial court erred in allowing the state to reopen its case to introduce the preliminary hearing testimony of Calvin Hunter, (3) the trial court erred in admitting into evidence a redacted statement made by Price, the victim, referring to other crimes allegedly committed by petitioner. Price had given the statement to Washington, D.C. authorities implicating petitioner and Moody in a crime committed there. (4) Trial counsel failed to object to the jury charge thereby denying petitioner effective assistance of counsel, (5) the trial court erred in admitting evidence of prior criminal conduct, and trial counsel failed to move for a mistrial when references to prior and distinct criminal acts were made thereby denying petitioner effective assistance of counsel, (6) trial counsel failed to move for a mistrial because of allegedly prejudicial remarks made by the

5

assistant district attorney in his closing argument thereby denying petitioner effective assistance of counsel. See Exhibit A.

Petitioner argues that his second Habeas Corpus Petition should not constitute an abuse of the writ because he was not represented by counsel when he filed the first Habeas Corpus Petition. In the case of <u>Caswell v. Ryan</u>, 953 F.2d 853, 862 (3d Cir. 1992) the Third Circuit made clear that pro se status does not constitute an "objective factor external to the defense" that will provide cause for a procedural default. Rather, the same standard of cause that applies where a prisoner is represented by counsel is also applicable to a prisoners own default. 953 F.2d at 862. Since the same cause and prejudice standard for procedural default applies in the abuse of the writ context, <u>Caswell</u> controls here and precludes petitioner's argument.

Petitioner also asserts that his pro se status is of particular significance here because he was incarcerated when he filed his prior Habeas Petition and was unaware of pertinent information that his previous counsel had failed to discover and the government had failed to give him, specifically notes of testimony from the sentencing of Commonwealth witness Calvin Hunter, which, in petitioner's view supported his claim that Hunter testified against him in exchange for favorable treatment from the Commonwealth. The petitioner had a basis for raising the present claims in his first Habeas Corpus proceeding without

the information that he later discovered.  Petitioner argued at trial that the government had made a deal with its chief witness. He could have made that same argument in his first Habeas Corpus action.  Petitioner's failure to discover the material in question before he filed his first Habeas Corpus Petition does not constitute an "external impediment" excusing his failure to raise his current claims at the earlier proceeding.  The same is true as to the second point raised by petitioner, based upon the court's refusal to allow the impeaching testimony of James X. Turner, and counsel's failure to preserve that issue on appeal. That issue was thoroughly raised at trial, had to have been known by petitioner and could have been raised in the first Habeas Corpus Petition.  See trial N.T. 931-933.

        Petitioner also argues that because he was not represented by counsel in the prior proceeding he was mislead into believing that a Habeas petitioner could return to the Federal Courts any number of times without impunity.  In petitioner's first Habeas action, Griffin v. Zimmerman, C.A. No. 84-1462, the Honorable Clarence C. Newcomer dismissed that petition as a "mixed" petition, containing both exhausted and unexhausted claims which pursuant to Rose v. Lundy, 455 U.S. 509 (1982), could not be entertained.  In dismissing the petition Judge Newcomer explained that:

> Petitioner may either return to the State Courts and
> seek consideration . . . of his unexhausted claims
> . . . or refile his petition in this Court with only
> his exhausted claims.  However, this action will not
> proceed in its current form.  Petitioner thereafter
> refiled his petition, presenting only his exhausted

claims.[2] <u>Griffin v. Zimmerman</u>, C.A. No. 84-1843.  It was the refiled petition that was denied on its merits.

Petitioner contends that it was this language that misled him.  I must first point out that the unexhausted claims petitioner abandoned are <u>not</u> the new claims which are the subject of this Habeas Corpus Petition.  In my view the alternatives set forth in the order are clear and no reasonable interpretation would cause petitioner to think that he could file subsequent petitions.  In any event "cause" for failure to raise new Habeas Corpus claims at the appropriate time requires a showing of some impediment external to the defense that prevents a litigant from raising a claim.  Misunderstanding of the law would not be such an external impediment.

Lastly, in an extraordinary case, where a Constitutional violation has probably resulted in the conviction of one who is actually innocent, a Federal Habeas Corpus Court may grant the Writ even in absence of a showing of cause for the procedural default.  <u>Engle v. Isaac</u>, 102 Sup.Ct. 1558 (1982); <u>Murry v. Carrier</u>, 106 Sup.Ct. 2639, 2649 (1991).  I see nothing in the pleadings before me that would justify the granting of the Writ in the absence of a showing of cause and actual prejudice.

For the above reasons I enter the following order.

---

2.  The unexhausted claims petitioner abandoned are not relevant to the instant petition.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FILED

JOHN GRIFFIN                                      CIVIL ACTION
                                    MAR 2 8 1994
        V.                                    :
                          MICHAEL E. KUNZ, Clerk
DONALD T. VAUGHN, et al.              :    Dep. Clerk
                          By_____:        NO. 93-4862

ORDER

AND NOW, this 28th day of March 1994, upon consideration of the pleadings filed by the parties IT IS ORDERRED that:

      1.   The Petition for a Writ of Habeas Corpus is DENIED.

      2.   There is no probable cause for appeal.

BY THE COURT:

Robert F. Kelly,                    J.

3·29·94
Copy/ R.P.
  EPSTEIN
  ZUCKER
  FLEISHER
mc (terminated)
  terminated
STATS: CASE CLOSED 3/28/94